OPINION
{¶ 1} Defendant-appellant, Timothy Dunaway, appeals the decision of the Butler County Court of Common Pleas classifying him as a sexual predator. Appellant also appeals his sentence for the underlying offense of sexual battery, specifically the trial court's imposition of court-appointed counsel costs, restitution, and a fine. We affirm the trial court's decision.
 {¶ 2} In June 2001, appellant was indicted on two counts of sexual battery in violation of R.C. 2907.03(A)(5), a third-degree felony, and one count of domestic violence in violation of R.C. 2919.25(A), a first-degree misdemeanor. The indictment stemmed from allegations that he engaged in sexual conduct with his sixteen-year-old stepdaughter and caused or attempted to cause physical harm to his wife. Appellant subsequently pled guilty to one count of sexual battery and was convicted by the trial court. The other count of sexual battery and the domestic violence count were merged into appellant's sexual battery conviction.
 {¶ 3} The trial court held a sentencing hearing in July 2001 and a sexual predator hearing in November 2001. In a November 2001 judgment entry, the trial court sentenced appellant to four years in prison and ordered him to pay restitution, a $500 fine, the costs of prosecution, and counsel costs. The trial court also found appellant to be a sexual predator.
 {¶ 4} Appellant now appeals the trial court's decision classifying him as a sexual predator as well as its imposition of counsel costs, restitution, and a fine. Appellant assigns three errors.
Assignment of Error No. 1:
 {¶ 5} "The trial court erred in finding defendant-appellant to be a sexual predator."
 {¶ 6} In this assignment of error, appellant argues that the state did not prove by clear and convincing evidence that appellant is a sexual predator.
 {¶ 7} In determining whether an offender should be classified as a sexual predator under R.C. Chapter 2950, the trial court must find, by clear and convincing evidence, that an individual has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses. R.C.2950.01(E); State v. McCullough, Fayette App. No. CA2001-02-004,2001-Ohio-8703. Given that appellant pled guilty to sexual battery, a sexually oriented offense, the issue for the trial court was whether there was clear and convincing evidence that appellant was likely to commit another sexually oriented offense in the future.
 {¶ 8} Clear and convincing evidence is that evidence "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, 477; see, also, State v. Eppinger, 91 Ohio St.3d 158,164, 2001-Ohio-247. While clear and convincing evidence is "more than a mere preponderance" of the evidence, it is less than that which constitutes evidence "beyond a reasonable doubt." Id. at 164, citingCross, 161 Ohio St. at 477.
 {¶ 9} When making a determination as to whether a defendant is a sexual predator, 2950.09(B)(2) requires the trial court to consider all relevant factors, including, but not limited to, all of the following:
 {¶ 10} "(a) The offender's age;
 {¶ 11} "(b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 12} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 {¶ 13} "(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 {¶ 14} "(e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offenses or to prevent the victim from resisting;
 {¶ 15} "(f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense, and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 {¶ 16} "(g) Any mental illness or mental disability of the offender;
 {¶ 17} "(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 18} "(i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 {¶ 19} "(j) Any additional behavioral characteristics that contribute to the offender's conduct."
 {¶ 20} The trial court must "consider" these factors before classifying an offender as a sexual predator. State v. Thompson,92 Ohio St.3d 584, 588, 2001-Ohio-1288. This simply means that the trial court must reflect upon them or "think about them with a degree of care or caution." Id. at fn. 1. However, the trial court has the discretion to determine what weight, if any, to assign the factors. Id. at paragraph one of the syllabus.
 {¶ 21} The trial court stated at the sexual predator hearing that it reviewed all the information provided to it, including victim impact statements, the presentence investigation report, appellant's criminal history, and the reports of Dr. Hopes and Dr. Fulero. In its judgment entry, the trial court stated that it considered all the factors contained in R.C. 2950.09(B)(2).
 {¶ 22} In finding appellant to be a sexual predator, the trial court noted appellant's criminal history, his history of alcohol and drug abuse, and his pattern of physical, emotional, and sexual abuse of women. The trial court also noted, based on the reports of Dr. Hopes and Dr. Fulero, the significant risk that appellant would again commit a sexually oriented offense.
 {¶ 23} We find that the trial court's decision is supported by clear and convincing evidence in the record. Appellant was 33 years old at the time of the offense while the victim, his stepdaughter, was 16 years old. According to the victim, appellant had engaged in sexual conduct with her several times prior to the incident for which he was convicted. Appellant told the victim not to tell anyone and that he would tell her mother about her smoking habit if she did. He also stated that he would ground her and not let her spend time with her friends.
 {¶ 24} The presentence investigation report reveals that appellant has prior convictions for domestic violence, theft, and DUI. Appellant admits to previous drug use including marijuana and crack cocaine. Appellant tested positive for marijuana three times in 1998 while on probation.
 {¶ 25} Dr. Hopes concluded that there is a high risk that appellant will commit another sexually oriented offense in the future. Appellant scored a five on the SORAG (Sex Offender Risk Assessment Guide) test with nine being most likely to re-offend and one being least likely to re-offend. According to Dr. Hopes, approximately 59% of the people with this score re-offend within ten years.
 {¶ 26} Dr. Hopes expressed additional concerns that increased the risk of recidivism, including appellant's prior convictions, appellant's history of alcohol and drug abuse, and allegations of prior sexual conduct by appellant with a minor. According to Dr. Hopes' report, the victim's sister had previously reported that appellant touched her in a sexual manner when she was nine years old. Dr. Hopes also noted appellant's "anger and disdain toward women and a pattern of treating them abusively — physically, emotionally, and sexually." Dr. Hopes stated that appellant, if released into the community, should be "referred to sex offender treatment, substance abuse treatment, and domestic violence classes, and should be monitored extremely closely."
 {¶ 27} Dr. Fulero concluded that there is a moderate to high risk that appellant will commit a sexually oriented offense in the future. Importantly, Dr. Fulero noted that appellant did not show remorse for his actions. According to Dr. Fulero's report, appellant did not acknowledge the impact of his actions on the victim or give any indication that he thought his actions were inappropriate. Dr. Fulero stated that appellant's attitude toward his actions "suggest current risk, at least until dealt with in sex offender treatment."
 {¶ 28} After reviewing all the evidence before the trial court, we find clear and convincing evidence supporting its decision. Dr. Hopes and Dr. Fulero found that there was at least a "moderate to high" chance that appellant would re-offend. These opinions, viewed together with appellant's criminal history, his history of alcohol and drug abuse, his pattern of abusing women, his lack of remorse and appreciation of the effects of his conduct, and the rest of the evidence before the trial court, strongly support the trial court's decision. Accordingly, we overrule appellant's first assignment of error.
Assignment of Error No. 2:
 {¶ 29} "The trial court erred in classifying defendant-appellant as a sexual predator and subjecting defendant-appellant to all ramifications thereto."
 {¶ 30} In this assignment of error, appellant argues that R.C. 2950, et seq., Ohio's sexual predator statute, is unconstitutionally vague and unconstitutional on its face. Appellant contends that the statute violates the equal protection clause, the double jeopardy provisions, and the "cruel and unusual punishment" provisions of the Ohio and United States Constitutions. Appellant also argues that the statute violates the provisions in Section 1, Article I of the Ohio Constitution guaranteeing an individual's right to pursue happiness, the right to pursue a business or an occupation, the right to enjoy and protect one's reputation, and the right to a redress of one's legal grievances.
 {¶ 31} We do not find that R.C. 2950, et seq., is unconstitutionally vague or unconstitutional on its face. Appellant's arguments have been previously addressed and rejected by this court and the Ohio Supreme Court. In State v. Williams, 88 Ohio St.3d 513,2000-Ohio-428, the Ohio Supreme Court held that R.C. 2950 is not unconstitutionally vague. The Williams court also held that the statute does not violate the declaration of Section 1, Article I of the Ohio Constitution. Further, the court held that the statute does not violate the double jeopardy or equal protection clauses. This court has held that R.C. 2950 does not violate the "cruel and unusual punishment" clause.State v. Becker, Clermont App. No. CA2001-02-022, 2001-Ohio-8620; Statev. Wilson (Nov. 13, 2000), Fayette App. No. CA99-09-024.
 {¶ 32} Accordingly, appellant's second assignment of error is overruled.
Assignment of Error No. 3:
 {¶ 33} "The trial court erred by imposing fines, restitution and costs for court appointed counsel in the case sub judice."
 {¶ 34} In this assignment of error, appellant argues that the trial court erred by imposing court-appointed counsel costs, $275 in restitution, and a $500 fine without considering appellant's present and future ability to pay.
 {¶ 35} R.C. 2929.18(A) authorizes a trial court to impose financial sanctions, such as fines or restitution, upon felony offenders. Before imposing a financial sanction under R.C. 2929.18, the trial court "shall consider the offender's present and future ability to pay the amount of the sanction or fine." R.C. 2929.19(B)(6). A trial court that imposes a financial sanction upon an offender may hold a hearing on the offender's ability to pay fines or restitution, but a hearing is not required. State v. Stevens (Sept. 21, 1998), Clinton App. No. CA98-01-001; R.C. 2929.18(E).
 {¶ 36} All that R.C. 2929.19(B)(6) requires is that the trial court consider the offender's present and future ability to pay. Even a finding that a defendant is indigent for the purpose of receiving appointed counsel does not prohibit the trial court from imposing a financial sanction. State v. Kelly (2001), 145 Ohio App.3d 277, 283.
 {¶ 37} The trial court did not explicitly state that it considered appellant's present and future ability to pay the financial sanctions it imposed. However, in its sentencing entry, the trial court stated that it had considered, among other things, the presentence investigation report ("PSI"). The PSI, which is included in the record, contains financial and employment information about appellant. It states that appellant was self-employed since 1997 for "Debbie and Tim Pressure Cleaning Business" and earned $16,000 to $17,000 annually. According to the PSI, appellant also mentioned employment with Mayflower Movers, though no further information is included in the report. The PSI further indicates that appellant had no major assets and no major liabilities at the time, and that he was in good health.
 {¶ 38} Given this information in the PSI and the trial court's statement in its sentencing entry that it considered the PSI, we find sufficient evidence in the record indicating that the trial court considered appellant's present and future ability to pay financial sanctions before imposing $275 in restitution and a $500 fine. See, also, State v. Martin, 140 Ohio App.3d 326, 327-328, 2000-Ohio-1942;State v. Southerland, Butler App. No. CA2001-06-153, 2002-Ohio-1911
(similarly finding that trial court considered present and future ability to pay).
 {¶ 39} A trial court's authority to impose court-appointed counsel costs is governed by R.C. 2941.51. That section allows a trial court to order that an accused pay court-appointed counsel costs "if the person has, or reasonably may be expected to have, the means to meet some part of the cost of the services rendered to the person." R.C. 2941.51(D). Interpreting this section, we have held that the trial court must make an "affirmative determination on the record" that the accused has the ability to pay or may reasonably be expected to have the ability to pay. See State v. Cooper, 147 Ohio App.3d 116, 2002-Ohio-617, at ¶ 71;State v. Rivera-Carrillo, Butler App. No. CA2001-03-054, 2002-Ohio-1013.
 {¶ 40} In this case, the PSI contained information concerning appellant's employment history and financial condition, and stated that appellant was in good health. The trial court stated that it considered the PSI before issuing appellant's sentence, which included an order to pay court-appointed counsel costs. Under these circumstances, we find that the requirements of R.C. 2941.51(D) have been satisfied.[1] The record reveals that appellant could reasonably be expected to have the ability to pay. By explicitly stating that it considered the PSI and then proceeding to impose counsel costs, the trial court affirmatively determined that appellant could reasonably be expected to have the ability to pay these costs.
 {¶ 41} Accordingly, appellant's third assignment of error is overruled.
Judgment affirmed.
WALSH, P.J., and YOUNG, J., concur.
[1] To the extent that the Cooper decision requires the court to make an affirmative determination on the record of an individual's ability to pay court-appointed counsel costs, we hereby limit Cooper to those cases in which the record lacks any information from which a court could affirmatively determine that the defendant has or reasonably may be expected to have the means to pay court-appointed counsel costs.